# EXHIBIT G

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION _____
JUDGE _____
ELECTRONICALLY FILED

LATHAM COMPANIES, LLC                                         PLAINTIFF
d/b/a LITTLE ENGLISH

v.

BLISS COLLECTION, LLC                                         DEFENDANT
d/b/a BELLA BLISS
    Serve: Elizabeth McLean
         Registered Agent
         800 Winchester Road
         Lexington, KY 40509

## COMPLAINT

Plaintiff Latham Companies, LLC d/b/a Little English, for its complaint against Defendant Bliss Collection, LLC d/b/a Bella Bliss, hereby states as follows:

1. Latham Companies, LLC d/b/a Little English is a Kentucky limited liability company having a principal place of business in Lexington, Kentucky.

2. Bliss Collection, LLC d/b/a Bella Bliss is a Kentucky limited liability company having a principal place of business in Lexington, Kentucky.

### FACTUAL ALLEGATIONS

3. Little English is an upscale life-style brand best known for its classic children's clothing.

4. The company was founded in 2004 by Shannon Latham and is headquartered in Lexington, Kentucky.

5. Little English clothing is sold in high-end children's clothing boutiques across the United States, as well as national retailers such as Nieman Marcus and Bergdorf Goodman, and through its online boutique at littleenglish.com.

6. Little English clothing is characterized by its premium fabrics, including pima cotton and soft-washed corduroys, and classic designs such as smocked bishops, long-alls, bubbles, and john johns. Many of the pieces contain speciality hand-work.

7. Because of the unique design elements of Little English's products, only specialized manufacturers are capable of producing the clothing.

8. One of the specialized manufacturers which Little English uses to produce its products is a company called Mis Bordados, Ltda, (hereinafter "Mis Bordados") located in Bucaramanga, Columbia.

9. Little English has worked with Mis Bordados since 2016 and has increased its business with the manufacturer every year.

10. Little English and Mis Bordados anticipated the continuation of this relationship into the future and were actively preparing to have Mis Bordados manufacture the samples needed for Little English's Spring 2021 line.

11. On January 29, 2020, one of Mis Bordados' owners, Carlos Alberto Escobar Gomez (hereinafter "Carlos Gomez"), emailed Shannon Latham at Little English to request the opportunity to visit the company.

12. A true and correct copy of Carlos Gomez's email is attached hereto as Exhibit A.

13. Carlos Gomez indicates in the email that "visit[ing] our customers . . . is something important that we should do once in a while."

14. Carlos Gomez calls the opportunity to visit his valued business partner, Little English, "amazing," underscoring the value Mis Bordados attached to its relationship with Little English and in clear anticipation of a continuing relationship with Little English.

15. The next day, Shannon Latham, on behalf of Little English, responded by email to Carlos Gomez telling him she would be "happy to show you our facility and take you to dinner one of those nights."

16. A true and correct copy of Latham's response email is attached hereto as Exhibit B.

17. In Carlos Gomez's email to Little English about his trip to America, he mentions his intention to also visit Elizabeth McLean while in Lexington. *See,* Exhibit A.

18. Elizabeth McLean is the owner of Bliss Collections, LLC d/b/a Bella Bliss (hereinafter "Bliss"), which also sells children's clothing.

19. Upon information and belief, Mis Bordados manufactures clothing for both Little English and Bliss.

20. Upon information and belief, Carlos Gomez communicated his intentions to travel to America and visit customers in Lexington to Elizabeth McLean and mentioned his intention to also meet with Shannon Latham, thereby informing McLean and Bliss that Mis Bordados was manufacturing for Latham's company, Little English.

21. Prior to founding Little English in 2004, Shannon Latham had been a business partner with Elizabeth McLean in Bliss.

22. Latham sold her interest in Bliss and, approximately a year later, started Little English.

23. After Latham sold her interest in Bliss, McLean became angry and vindictive, filing a lawsuit in 2005 styled *Bliss Collection, LLC v. Latham Companies, LLC* against Shannon Latham's new company, Latham Companies, LLC, in the United States District Court for the Eastern District of Kentucky and seeking an injunction that would have prevented Latham Companies from selling certain of its products.

3

24. Bliss threatened, by this lawsuit, to disrupt Little English's business just as the brand was starting to become established.

25. Bliss caused Latham Companies to incur substantial legal fees in its defense against Bliss's request for an injunction.

26. Upon information and belief, Bliss intended its lawsuit to have this disruptive effect upon Little English's business and instituted the lawsuit for this improper purpose.

27. Ultimately, Bliss's attempt to obtain an injunction failed.

28. A true and correct copy of the Westlawnext.com report of the Memorandum Opinion and Order denying Bliss's motion for a preliminary injunction in *Bliss Collection, LLC v. Latham Companies, LLC* is attached hereto as Exhibit C.

29. The parties resolved their dispute through an agreed settlement, the terms of which were reduced to writing and acknowledged by each party on August 25, 2006, over thirteen years ago.

30. A true and correct copy of that settlement agreement is attached hereto as Exhibit D.

31. As part of the settlement of their dispute, Bliss obtained Little English's agreement to refrain from using six particular manufacturers which were specifically set forth and named in the settlement agreement.

32. Implicit in the settlement agreement is that Little English was free to utilize any manufacturer <u>not</u> specifically excluded by the settlement agreement.

33. Mis Bordados was not one of the six manufacturers excluded by the settlement agreement.

34. There is no restriction upon either Little English or Bliss from using Mis Bordados as a manufacturer of their products.

4

35. Little English had manufactured for over five years with Mis Bordados without issue or interruption.

36. Upon information and belief, Bliss became aware of the fact that Mis Bordados was manufacturing for Little English when Carlos Gomez contacted Latham and McLean about the possibility of visiting their companies during his upcoming visit to the United States.

37. Upon information and belief, McLean, on behalf of Bliss, then contacted Mis Bordados and pressured Mis Bordados to cancel its visit to Little English.

38. On February 10, 2020, in response to an inquiry from Little English about Carlos Gomez's travel plans, he indicated that they would "need to reschedule the date for our trip to the US."

39. A true and correct copy of that email is attached hereto as Exhibit E.

40. Upon information and belief, McLean, on behalf of Bliss, also contacted Mis Bordados to provide it with false information, including that it would constitute a "conflict of interest" for Mis Bordados to manufacture for both Bliss and Little English.

41. It is not a "conflict of interest" for Mis Bordados to manufacture for both Bliss and Little English.

42. It is a standard business practice for manufacturers to provide goods for multiple clients, even when those clients are competitors.

43. Upon information and belief, McLean, on behalf of Bliss, threatened to pull Bliss's business with Mis Bordados unless Mis Bordados terminated its business relationship with Little English.

5

44. Upon information and belief, Mis Bordados does more volume of business with Bliss than Little English, giving Bliss significant leverage over Mis Bordados and the ability to substantially negatively impact Mis Bordados's financial well-being.

45. There was no legitimate business purpose for McLean and Bliss to threaten Mis Bordados and to interfere with Mis Bordados's business relationship with Little English.

46. McLean and Bliss's purpose in making such a threat to Mis Bordados was to cause Mis Bordados to terminate its relationship with Little English, thereby disrupting Little English's ability to do business.

47. As a result of Bliss's improper interference, Little English will suffer financial harm and injury to its brand and business good will.

48. Bliss's threat achieved its intended purpose.

49. In response to McLean and Bliss's threat, on or about February 22, 2020, Carlos Gomez emailed Shannon Latham, to inform her that Mis Bordados will not continue to produce garments for Little English.

50. A true and correct copy of Gomez's email is attached hereto as Exhibit F.

51. Pursuant to the email, Mis Bordados's decision to terminate its business relationship with Little English was specifically in response to an alleged "conflict of interest between customers that we produce for."

52. Carlos Gomez indicates that he "regrets" the termination and "sincerely wish[es] it would not have happened."

53. Mis Bordados's termination of its business relationship with Little English would not have occurred but for the interference of this other customer, namely Bliss, with this relationship.

6

54. Little English had a valid business expectancy, based upon its prior business relationship with Mis Bordados and recent communications to this effect, that Mis Bordados would be preparing certain samples for Little English's Spring 2021 line.

55. Due to the nature of the clothing industry, samples of garments for sale must be made several seasons in advance.

56. The window for preparing samples for the Spring 2021 season is rapidly closing.

57. Mis Bordados has now refused to prepare samples for Little English's Spring 2021 line.

58. Little English will be forced to incur additional business expenses in an effort to locate another manufacturer to produce the samples for its Spring 2021 line.

59. Due to the specialized nature of the clothing to be manufactured, it will be difficult – and perhaps impossible – for Little English to obtain another manufacturer to produce the samples needed for its Spring 2021 line.

60. Due to current global events, finding a replacement manufacturer will be even more difficult than normal.

61. Many potential manufacturers are located within China or other areas of Asia.

62. The outbreak of coronavirus in China has proved disruptive to manufacturing in the region and Little English will likely not be able to use another manufacturer in this region.

63. Additionally, manufacturing resources in other areas of the world are now more scarce or more expensive as companies who have previously manufactured with Asian manufacturers seek alternative manufacturing sources outside of Asia in response to the coronavirus outbreak.

7

64. Disruption to Little English's Spring 2021 line will result in damages including increased business expenses, lost sales, and damage to Little English's good will and brand.

## COUNT I: BREACH OF CONTRACT

65. Plaintiff restates, realleges, and reiterates each and every prior paragraph as though set forth fully herein.

66. A valid contract exists between Bliss and Little English by virtue of the parties' settlement agreement.

67. The settlement agreement provides that Little English may not utilize six specifically identified manufacturers.

68. It is an implied term of the settlement agreement that Little English is free to use any manufacturer not specifically listed in the settlement agreement.

69. Bliss breached the parties' contract by disrupting Little English's business relationship with a manufacturer that Little English could properly engage in business dealings with.

70. Futhermore, the settlement agreement provides that Bliss will not make false or misleading statements about Little English's company, members, or products.

71. Bliss breached the parties' contract by making false or misleading statements about Little English to a third-party, Mis Bordados, including that there exists a "conflict of interest" between the two companies and/or their product lines.

72. Little English has suffered damages as a result of Bliss's breach of the parties' settlement agreement in an amount to be established at trial.

## COUNT II: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

73. Plaintiff restates, realleges, and reiterates each and every prior paragraph as though set forth fully herein.

74. A valid contract exists between Bliss and Little English by virtue of the parties' settlement agreement.

75. In Kentucky, there is a duty of good faith and fair dealing implicit in every contract.

76. This duty imposes upon the parties to the contract a duty to do everything necessary to carry out the terms of the contract and to not prevent a party from exercising its contractual rights.

77. It was an implied term of the parties' settlement agreement that Little English could properly carry out its children's clothing business unhindered except that it could not utilize six specifically named manufacturers in the production thereof.

78. Bliss has violated the duty of good faith and fair dealing by seeking to restrict Little English's ability to properly carry out its children's clothing business by restricting its ability to utilize the manufacturer of its choice.

79. Little English has suffered damages as a result of Bliss's breach of its duty of good faith and fair dealing in an amount to be determined at the trial of this matter.

**COUNT III: TORTIOUS INTERFERENCE WITH CONTRACT**

80. Plaintiff restates, realleges, and reiterates each and every prior paragraph as though set forth fully herein.

81. Little English and Mis Bordados had a valid contract by which Mis Bordados was to provide manufacturing services for Little English.

82. Bliss gained knowledge of the existence of this contractual relationship.

83. Upon gaining knowledge of the existence of this contractual relationship, Bliss sought to interfere with this contractual relationship and took steps to actively encourage and cause Mis Bordados to breach its contract with Little English.

9

84. Bliss's interference with Little English's contractual relationship was intentional.

85. Bliss's interference resulted in Mis Bordados breaching its contract with Little English.

86. Little English has suffered damages as a result of Mis Bordados' breach of their contract, procured by Bliss, in an amount to be determined at trial.

87. Bliss had no privilege or justification to excuse its conduct.

88. Bliss was motivated by spite.

**COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS/EXPECTANCY**

89. Plaintiff restates, realleges, and reiterates each and every prior paragraph as though set forth fully herein.

90. There existed a valid business relationship or expectancy between Little English and Mis Bordados.

91. This relationship and expectancy is evidenced by, among other things, their history of business dealings with each other, their mutual expectation for Mis Bordados to prepare Little English's Spring 2021 samples, and Mis Bordados' stated intention to visit Little English in furtherance of its relationship with this customer.

92. Bliss was aware of this relationship and expectancy.

93. Bliss learned through communications with Carlos Gomez that Mis Bordados was manufacturing products for Little English.

94. Bliss intentionally interfered with Little English's business relationship and expectancy with Mis Bordados.

95. After years of working together, Mis Bordados terminated its business relationship with Little English shortly after Bliss learned of the existence of this relationship.

10

Filed          20-CI-00808   02/28/2020          Vincent Riggs, Fayette Circuit Clerk

96. Mis Bordados indicated in contemporaneous communications that the termination was based on an alleged "conflict of interest" with another customer and expressed that Mis Bordados did not wish for this termination.

97. Bliss's owner McLean harbors ill will toward Little English's owner and was motivated by spite to interfere with Little English's relationship with Mis Bordados.

98. There was no proper motive or justification for Bliss to have interfered with Little English's relationship with Mis Bordados.

99. Bliss's interference caused Mis Bordados to terminate its relationship and business expectancy with Little English and Little English has suffered damages in an amount to be determined at trial.

100. Little English's damages include increased business expenses, loss of profit, and loss of business good will and/or damage to brand.

## COUNT V: PUNITIVE DAMAGES

101. Plaintiff restates, realleges, and reiterates each and every prior paragraph as though fully set forth herein.

102. KRS 411.184 authorizes punitive damages where a plaintiff shows by clear and convincing evidence that a defendant acted toward the plaintiff with oppression, fraud, or malice.

103. Bliss has acted toward Little English with oppression and malice in that it has subjected the plaintiff to cruel and unjust hardship and has engaged in conduct specifically intended to cause tangible or intangible injury to the plaintiff.

104. Bliss is liable to Little English for punitive damages.

## COUNT VI: ATTORNEY FEES

105.     Plaintiff restates, realleges, and reiterates each and every prior paragraph as though fully set forth herein.

106.     Attorney fees are recoverable from an adverse party in Kentucky if provided for by a specific contractual provision.

107.     The settlement agreement entered into by Bliss and Little English provides that the "prevailing party shall be entitled to all costs and reasonable attorneys' fees from the non prevailing party."

108.     Little English is entitled, pursuant to this contractual provision, to an award in an amount equal to the reasonable attorney fees and costs incurred by it in this action.

## COUNT VII: DECLARATION OF UNENFORCEABILITY AND/OR SCOPE OF ARBITRATION PROVISION

109.     Plaintiff restates, realleges, and reiterates each and every prior paragraph as though fully set forth herein.

110.     Pursuant to KRS 418.040, a plaintiff may ask for a declaration of rights from a court of general jurisdiction where it is made to appear that an actual controversy exists.

111.     The settlement agreement entered into by Bliss and Little English contains language indicating that any dispute arising thereunder "will be resolved by final and binding arbitration."

112.     Little English's tort claims do not constitute a dispute arising under the contract and, therefore, do not fall within the scope of the arbitration provision as written.

113.      Little English is entitled to a declaration that its tort claims are not subject to the arbitration provision in the parties' prior settlement agreement.

Filed          20-CI-00808   02/28/2020          Vincent Riggs, Fayette Circuit Clerk

Case: 5:20-cv-00217-CHB-MAS   Doc #: 1-8   Filed: 05/22/20   Page: 14 of 15 - Page ID#: 131

114. Pursuant to Ally Cat, LLC v. Chauvin, 274 S.W.3d 451 (Ky. 2009), the language in the parties' settlement agreement requiring arbitration of any dispute arising thereunder is unenforceable.

115. Subject matter jurisdiction to enforce an agreement to arbitrate is conferred upon a Kentucky court only if the agreement provides for arbitration in this state.

116. An agreement to arbitrate which fails to include the required provision for arbitration within this state is unenforceable in Kentucky courts.

117. The settlement agreement does not provide that the arbitration would occur within Kentucky.

118. As such, the arbitration language in the settlement agreement is unenforceable by a Kentucky court.

119. Little English is entitled to a declaration that the arbitration provision of the parties' settlement agreement is unenforceable as a matter of law.

120. Pursuant to Kentucky jurisprudence, if a provision of a contract is found to be unenforceable, that provision shall not affect other provisions of the contract.

121. Little English is entitled to a declaration that the invalid arbitration language should be stricken from the settlement agreement, but that all other language contained therein remains in full force and effect.

**WHEREFORE,** Little English seeks the following relief by this action,

A. Leave to amend this Complaint upon the completion of discovery;

B. For a trial by jury on all issues so triable;

C. Judgment against Bliss in an amount to be established by the evidence;

D. Punitive damages;

13

Filed          20-CI-00808   02/28/2020          Vincent Riggs, Fayette Circuit Clerk

Presiding Judge: HON. LUCY A. VANMETER (622386)

COM : 000013 of 000014

E. Prejudgment and post-judgment interest;

F. Attorney's fees and costs expended herein; and

G. For all other relief to which Little English may be entitled.

Respectfully submitted,

/s/ Karen C. Jaracz
Laurence J. Zielke
Karen C. Jaracz
Zielke Law Firm, PLLC
462 S. Fourth St., Suite 1250
Louisville, KY 40202
(502) 589-4600
lzielke@zielkefirm.com
kjaracz@zielkefirm.com
*Counsel for Latham Companies, LLC
d/b/a Little English*

14