UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BLISS COLLECTION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:20-CV-217-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| LATHAM COMPANIES, LLC, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Report and Recommendation ("R&R"), [R. 53],

and the Supplemental Report and Recommendation ("SR&R"), [R. 55], of Magistrate Judge

Matthew A. Stinnett. The R&R addresses Defendant Latham Companies, LLC's (hereinafter

"little english") Motion for Attorney Fees, [R. 38]. Plaintiff Bliss Collection, LLC (hereinafter

"bella bliss") responded, [R. 51], and Defendant replied, [R. 52]. In his R&R, Magistrate Judge

Stinnett recommended that this Court grant Defendant's Motion for Attorney Fees as to the

copyright infringement claims but deny the Motion as to the trademark claims. [R. 53, pp. 1–2].

The R&R ordered Defendant to file an amended affidavit for attorneys' fees to reflect only the

fees attributable to the copyright infringement claims. *Id.* at 11. In accordance with that order,

Defendant filed an Amended Affidavit on Attorney Fees, [R. 54]. In the SR&R, Magistrate

Judge Stinnett recommended that this Court award Defendant $78,925 in attorneys' fees. [R. 55,

p. 3]. Both parties filed timely objections. [R. 56; R. 57]. This matter is now ripe for

consideration. For the reasons set forth below, the Court will adopt the R&R and reject in part

the SR&R.

## I.      BACKGROUND

In 1999, Elizabeth McLean, Jennifer Vernooy, and Shannon Latham founded Plaintiff bella bliss, primarily to design and sell high-end children's clothing and accessories. [R. 11, p. 3, ¶¶ 8–10]. As part of its business, bella bliss copyrighted numerous designs for its children's clothing, including specific designs and colors for monkeys, butterflies, frogs, snails, submarines, horses, turtles, and whales, all utilized in its product line. *Id*. at 6–11, ¶¶ 22–41. bella bliss also sought a trademark for BELLA BLISS B & Design for countless products. *Id*. at 11–14, ¶¶ 42–54. In 2004, after leaving and selling her interest in bella bliss, Shannon Latham formed Defendant little english. *Id*. at 17, ¶¶ 65–68. little english also designs and sells "high-end boutique, classic children's clothing." [R. 14–1, p. 1].

In 2005, Plaintiff filed a lawsuit against Defendant in the United States District Court for the Eastern District of Kentucky, alleging false designation of origin, breach of contract, misappropriation of confidential information and trade secrets, interference with prospective economic advantage, civil conspiracy, unfair competition, and unjust enrichment. *See* [R. 11–6]. The parties settled the matter in July 2006 and carried on for almost fifteen years without issue. *See* [R. 11–7].

However, in 2020, Plaintiff's owner McLean discovered that Plaintiff and Defendant were using the same Columbian garment manufacturer, Mis Bordados. [R. 38–1, p. 2]. Plaintiff had a long-standing relationship with Mis Bordados and allegedly threatened to find a new manufacturer if Mis Bordados continued to work with Defendant. *Id*. at 2–3. Mis Bordados then terminated its six-year manufacturing relationship with Defendant. *Id*. at 3. On February 28, 2020, Defendant filed a lawsuit against Plaintiff in Fayette Circuit Court for, among other claims, tortious interference with Defendant's contract with Mis Bordados. *Id*. at 3; *see also*

2

[R. 14–6].

On May 11, 2020, Plaintiff sent a cease-and-desist letter to Defendant regarding copyright and trademark infringement. [R. 38–1, p. 3]. Subsequently, on May 22, 2020, Plaintiff commenced this action against Defendant. [R. 1]. Plaintiff amended its Complaint[1] as a matter of course, pursuant to Federal Rule of Civil Procedure Rule 15(a)(1)(B). *See* [R. 11]. The Amended Complaint alleged (1) federal copyright infringement; (2) federal trademark infringement; (3) federal trade dress infringement; (4) federal false designation of origin and misappropriation of source; (5) Kentucky common law trademark infringement; (6) federal unfair competition; and (7) Kentucky common law unfair competition. *Id.* at 48–58, ¶¶ 176–253.

On August 14, 2020, Defendant filed a Motion to Dismiss the Amended Complaint, seeking dismissal of all claims asserted by Plaintiff. [R. 14]. The Court granted the Motion in part, dismissing Plaintiff's claims for copyright infringement and trade dress infringement. [R. 22, p. 19]. The Court denied the Motion as to Plaintiff's federal and state trademark infringement claims, the federal and state unfair competition claims, and the federal false designation of origin claim. *Id.*

Defendant then filed a Motion to Reconsider, Certify for Interlocutory Appeal, or Order Limited Discovery, arguing that the Court should dismiss Plaintiff's trademark infringement claim pursuant to *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009). *See* [R. 28–1]. Although the Court rejected Defendant's interpretation of *Hensley*, it agreed with Defendant that the evidence of "consumer confusion" presented by Plaintiff was related to the dismissed

---

[1] The Amended Complaint supersedes the initial Complaint for all purposes. *William Powell Co. v. Nat'l Indem. Co.,* 18 F.4th 856, 870 n.6 (6th Cir. 2021); *see also In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013)

copyright claims, not the trademark claims. [R. 36, pp. 9, 11]. Accordingly, the Court dismissed Plaintiff's trademark claim for failure to state a claim. *Id.* at 14. Because the remaining claims for federal false designation of origin, Kentucky trademark infringement, and both state and federal unfair competition were "substantively the same" as the federal trademark infringement claim, the Court dismissed the Amended Complaint in its entirety. *Id.*; *see also* [R. 37].

Exactly one month after the dismissal of Plaintiff's Amended Complaint, Plaintiff filed a Notice of Appeal as to the Court's Orders pertaining to the trade dress infringement claim and Defendant's Motion to Reconsider.[2] [R. 39]. That same day, Defendant filed a Motion for Attorney Fees. [R. 38]. Plaintiff responded, [R. 51], and Defendant replied, [R. 52]. The Court referred the matter to Magistrate Judge Stinnett for a recommended disposition. [R. 44]. On November 18, 2021, Magistrate Judge Stinnett issued his R&R, recommending the Court grant in part Defendant's Motion for Attorney Fees. [R. 53]. Specifically, he found the Defendant entitled to attorneys' fees for prevailing on the copyright infringement claims, but not entitled to attorneys' fees for prevailing on the trademark claims. *Id.* at 1–2. The R&R ordered Defendant to file an amended affidavit for attorneys' fees, to reflect only those fees attributable to the copyright infringement claims, and instructed both parties to withhold their objections to the R&R until the Court determined the appropriate fee award. *Id.* at 11. Defendant filed an Amended Affidavit on Attorney Fees, seeking "a total fee award of $81,650." [R. 54–1, p. 2]. Defendant stated that the amended entries included "time spent on either the copyright claims or on activities that are inextricabl[y] intertwined with the copyright claim" and did not include any "fees incurred in responding to [Plaintiff's] unsuccessful Lanham Act claims." *Id.* at 1–2,

---

[2] The Sixth Circuit is currently holding the case in abeyance pending this Court's resolution of the Motion for Attorney's Fees. [R. 43].

¶¶ 4–5. In the alternative, if the Court rejected that some billing entries were "inextricabl[y] intertwined," Defendant requested a total fee award of $59,781.25. *Id.* at 2–3, ¶ 9. Defendant arrived at this alternative figure by halving all entries prior to the Court's Order at [R. 22]. [R. 54–1, pp. 2–3, ¶ 9]. In his SR&R, Magistrate Judge Stinnett recommended that the Court award Defendant $78,925 in attorneys' fees—the full requested amount minus the $2,725 claimed for "reviewing records, researching, and preparing the amended attorneys' fee affidavit." [R. 55, pp. 2–3].

Upon entry of the SR&R into the record, both parties filed timely objections. [R. 56; R. 57]. Defendant objected to the denial of attorneys' fees as to the trademark claims. [R. 56, p. 1]. Plaintiff objected to (1) the recommendation to award attorneys' fees as to the copyright infringement claims, and (2) the recommended amount of attorneys' fees in the SR&R (i.e., $78,925). [R. 57, p. 1].

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Magistrate Judge's report and recommendation ("R&R") or else waive his rights to appeal. When no objections are made, this Court is not required to "review … a magistrate's factual or legal conclusions, under a *de novo* or any other standard[.]" *Thomas v. Arn*, 474 U.S. 140, 151 (1985). Parties who fail to object to a magistrate judge's R&R are also barred from appealing a district court's order adopting that R&R. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *see also United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).

For properly made objections, non-dispositive matters are reviewed under a "limited" standard of review: the district court "must . . . modify or set aside any part of the order that is

clearly erroneous or is contrary to law." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993); Fed. R. Civ. P. 72(a). Dispositive matters, however, are reviewed *de novo* if a party makes proper objections. Fed. R. Civ. P. 72(b)(3). In order to receive *de novo* review by this Court, any objection to the recommended disposition must specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997)). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of HHS*, 932 F.2d 505, 509 (6th Cir. 1991).

### III.   ANALYSIS

#### a.  Entitlement to Attorneys' Fees

The Court will first analyze the parties' objections to the conclusions reached in the R&R. Specifically, the Court will analyze whether Defendant is entitled to attorneys' fees for the trademark and copyright claims.

#### i.  Trademark Claim

The Court finds that Defendant is not entitled to attorneys' fees for its successful defense of Plaintiff's trademark claims because this is not an "exceptional" case warranting fees pursuant to 15 U.S.C. § 1117. Under § 1117, which governs recovery for trademark violations under the Lanham Act, a "court *in exceptional circumstances* may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in

which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see also Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019) (applying *Octane*'s definition of an "exceptional" case under the Patent Act to the identical fee-shifting provision in the Lanham Act). In *Octane*, the Supreme Court advised that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." 572 U.S. at 555 (citation omitted). Nonetheless, recovery of attorneys' fees under the Lanham Act is "rare." *Id.* "District courts determine whether a case is exceptional in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Miller v. Hurst*, No. 21-5506, 2022 U.S. App. LEXIS 2494, at *11–12 (6th Cir. Jan. 26, 2022) (quoting *Octane*, 572 U.S. at 554) (internal quotation marks omitted).

Despite Defendant's arguments to the contrary, the Court does not find that Plaintiff's actions rise to the level of subjective bad faith. *See* [R. 56, pp. 4–5]. First, although the timing of this suit supports Defendant's argument that Plaintiff filed this suit as a leverage tactic for the Defendant's pending Fayette Circuit Court case against it, *see id.* at 4–5, the timing of the filing of this suit alone does not constitute bad faith. *See infra* Section III(a)(ii)(B); *see also Tinker, Inc. v Poteet*, No. 3:14-CV-2878-L (BK), 2018 U.S. Dist. LEXIS 149605, at *9–11 (N.D. Tex. Aug. 9, 2018) (refusing to award attorney fees under the Lanham Act based on the allegedly suspect timing of filing the lawsuit without "actual evidence" of improper motive). Second, Plaintiff did not exhibit any dilatory or inappropriate conduct during this suit. *See* [R. 53, pp. 6–7 (distinguishing cases in which courts have awarded fees based on bad faith by correctly noting that "[t]here is no evidence that bella bliss obfuscated or in any way delayed the litigation . . . or chose a venue that was inconvenient to little english.")]. Finally, the Court also rejects

7

Defendant's argument that Plaintiff acted in bad faith by relitigating arguments from the settled 2005 suit. *See* [R. 56, p. 4 ("In other words, [bella bliss] has tried the same argument before this same Court[.]")]. But, as Plaintiff stated in its Amended Complaint and the Court discussed in its prior Order, the present case is based on independent allegations that accrued after the 2006 settlement agreement. *See* [R. 11, p. 47, ¶ 171 ("The recently discovered infringement as set forth herein is wholly unrelated to the 2005 lawsuit and the 2006 Settlement Agreement and constitutes new infringements and misappropriation.")]; *see also* [R. 22, pp. 4–5 (rejecting Defendant's argument that claim preclusion barred some of Plaintiff's copyright claims)]. The decades-long bad blood between these parties does not, alone, demonstrate that Plaintiffs brought this action in bad faith.

Further, Plaintiff's trademark claims were not *exceptionally* meritless. In fact, the Court initially held that Plaintiff's trademark claims survived a motion to dismiss. [R. 22, pp. 15, 19]. Only upon reconsideration did the Court find the claims meritless. [R. 36, pp. 12–14]. Thus, though the Court eventually held that Plaintiff failed to plead an essential element of the trademark claim—consumer confusion as to the *trademarks*—Plaintiff did not present such a weak case to warrant attorneys' fees under § 1117, especially considering that Plaintiff's Complaint did allege consumer confusion regarding *products*. *Id.* at 13–14; *see also* [R. 11, pp. 46–48]. Accordingly, and considering the totality of the circumstances, the Court in its discretion finds that this is not an "exceptional" case meriting a rare attorneys' fee award under § 1117. *See Miller*, 2022 U.S. App. LEXIS 2494, at *11–12; *see also RLIS, Inc. v. Cerner Corp.*, No. 3:12-CV-209, 2015 U.S. Dist. LEXIS 117560, at *5 (S.D. Tex. Sept. 3, 2015) ("Since *Octane*, district courts tend to award fees based on substantive weakness when a party fails to

adduce any evidence to support its position or the party advances a position conclusively contradicted by the evidence."). Defendant's objection to the contrary is overruled.

### ii. Copyright Claim

The Court finds that Defendant is entitled to attorneys' fees for its successful defense of Plaintiffs' copyright claims. Section 505 of the Copyright Act provides that "the court in its discretion may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505 (emphasis added). The award of attorneys' fees is not mandatory, but, unlike attorneys' fees under the Lanham Act, a grant of attorneys' fees under the Copyright Act is "*the rule rather than the exception*" and "should be awarded routinely." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citation and quotation marks omitted) (emphasis added). However, "a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016).

The decision to grant attorneys' fees ultimately remains within the trial court's discretion, and Section 505 grants courts "wide latitude to award attorney's fees based on the totality of circumstances in a case." *Kirtsaeng*, 136 S. Ct. at 1985; *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) ("[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."). "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised[.]" *Fogerty*, 510 U.S. at 534 (citation and internal quotation marks omitted); *see also Kirtsaeng*, 136 S. Ct. at 1985. Courts should grant attorneys' fees "in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act." *Bridgeport Music v. Diamond Time*, 371 F.3d 883, 893 (6th Cir. 2004). The

purposes of the Act include "enriching the general public through access to creative works," and "promot[ing] the Progress of Science and useful Arts." *Fogerty*, 510 U.S. at 527 (citation omitted).

Here, Defendant is the prevailing party under § 505 of the Copyright Act, as the Court granted its Motion to Dismiss Plaintiff's copyright claims. *See* [R. 22, p. 19]. Therefore, it is the Court's duty to determine whether attorneys' fees are warranted in this action. *See Kirtsaeng*, 136 S. Ct at 1985; *Fogerty* 510 U.S. at 534. There are several *nonexclusive* factors the Supreme Court has endorsed that inform a court's fee-shifting decisions, including: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19; *Miller,* 2022 U.S. App. LEXIS 2494, at *10 (explaining that the *Fogerty* factors "need not all weigh in favor of the prevailing party to justify an award of attorney fees."). The Supreme Court has held that "substantial weight" should be given to the objective reasonableness of the losing party's positions. *Kirtsaeng*, 136 S. Ct. at 1989. That factor, however, is not controlling, and district courts continue to retain discretion to "take into account a range of considerations[.]" *Id.* at 1988.

## A.  Objective Reasonableness and Frivolousness

The "reasonableness" and "frivolousness" factors overlap conceptually, so the Court will consider them together. *See Philpot v. L.M. Commc'ns. II of S.C., Inc.*, 5:17-cv-173-CHB, 2020 WL 2513820, at *2 (E.D. Ky. May 15, 2020). A copyright claim may be unreasonable if the differences between the works are obvious. *See Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 794 (S.D. Tex. 2009) ("A claim is more likely to be found frivolous or objectively unreasonable . . . when the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work are obvious."); *see also Marcus v. ABC Signature Studios, Inc.*, No.

17-cv-00148-RSWL-AJWx, 2017 U.S. Dist. LEXIS 192889, at *9–10 (C.D. Cal. Nov. 20, 2017) (granting attorneys' fees to prevailing defendant, in part because there was no "legally cognizable similarity" protectable under copyright law and "the lack of substantial similarity was obvious."); *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005, 1013 (E.D. Mich. 2011) (finding a plaintiff's complaint objectively unreasonable because "no reasonable observer would conclude that Plaintiff's expression of his 'diaper jeans' are substantially similar to Defendant's expression of its 'jeans diapers[.]'").

Here, although Plaintiff's claims were not wholly frivolous, they were objectively weak enough to fail on a motion to dismiss. In granting Defendant's Motion to Dismiss as to the copyright claims, the Court explained that many of Plaintiffs' claims involved "unprotectable elements," such as "*scènes à faire* or stock elements and ideas first expressed by nature[.]" [R. 22, p. 11]. As to the remaining designs, the Court determined that no "reasonable observer" could find Defendant and Plaintiff's designs "substantially similar." *Id.* at 10–12. The Court specifically noted that "[t]hroughout every design, the coloring, shape and look of the animals' features, and the inclusion or absence of features varies *significantly* between Plaintiff's and Defendant's designs" *Id.* at 11 (emphasis added).

Further, the record suggests that Plaintiff was on notice of the deficiencies of its claims prior to filing suit. Specifically, Defendant put Plaintiff on notice of deficiencies in its response to Plaintiff's cease-and-desist letter. [R. 38–3, pp. 2–3]. Thus, even if Plaintiff did not agree with Defendant's arguments, the response letter alerted Plaintiff of the legal weaknesses of its case before it even filed its Complaint. *See id.*; *see also Miller v. Hurst*, No. 3:17-cv-00791, 2021 U.S. Dist. LEXIS 42753, *8–9 (M.D. Tenn. Mar. 8, 2021) (finding that the defendant's initial motion to dismiss placed plaintiff on notice that its claim was objectively unreasonable because it stated

that registration of a copyrighted work is a prerequisite to filing a federal copyright infringement suit), *aff'd Miller,* 2022 U.S. App. LEXIS 2494.  In sum, plain differences existed between the Plaintiff and Defendant's designs such that no "ordinary observer" could find them substantially similar. [R. 22, p. 10]. The weakness of Plaintiff's copyright claims weighs at least slightly in favor of granting attorneys' fees.

Plaintiff cites several cases for the proposition that failure to survive a motion to dismiss does not render a claim objectively unreasonable, but, like the cases it cited before Magistrate Judge Stinnett, these cases are "factually distinct and in different postures." [R. 53, p. 9]. First, Plaintiff cites *Strickland v. Spitalieri,* No. 1:19-cv-2899, 2020 U.S. Dist. LEXIS 57806 (N.D. Ohio Apr. 2, 2020), but fails to provide necessary context—*Spitalieri* involved a *pro se* litigant. *Id.* at *10. The *Spitalieri* court relied on the plaintiff's *pro se* status in affording him leniency as to attorneys' fees. *Id.* at *10–11 ("Given Strickland's pro se status and simple failure to properly plead the elements of his copyright and trademark infringement claims, the Court declines to exercise its discretion to award attorney fees[.]"). Here, in contrast, Plaintiff is a corporation represented by a large law firm. Therefore, *Spitalieri* is inapposite.

Next, Plaintiff cites to *Doyle v. Homes, Inc. v. Signature Grp. of Livingston, Inc.,* 69 F. Supp. 3d 674 (E.D. Mich. 2014) and *Malibu Media, LLC v. Doe,* No. 1:19-CV-950, 2020 U.S. Dist, LEXIS 189056 (N.D.N.Y. Oct. 13, 2020). However, these cases are also readily distinguishable. *Doyle* and *Malibu Media* both involved complex issues with substantial disagreement among lower courts. *Doyle,* 69 F. Supp. 3d at 681 ("The dispute resolved by this opinion and order involved a question of statutory interpretation that has created a circuit split and for which there was no governing Sixth Circuit precedent."); *Malibu Media,* 2020 U.S. Dist. LEXIS 189056, at *5–6 ("[D]istrict courts are split . . . And because neither the Supreme Court

12

nor the Second Circuit have addressed the issue, the Court cannot conclude that Malibu Media's infringement claim was frivolous or objectively unreasonable."). This case does not involve complex or novel legal questions, so *Doyle* and *Malibu* are inapplicable. In sum, despite Plaintiff's arguments to the contrary, Plaintiff's copyright claim was so weak that no reasonable factfinder could hold in its favor. Accordingly, this factor weighs at least slightly in favor of granting attorneys' fees.

## B.  Motivation and Deterrence

The Court agrees with Magistrate Judge Stinnett that Plaintiff may not have brought this action solely to vindicate copyright claims. *See* [R. 53, pp. 10–11]. These parties have a storied history, dating back to Latham's departure from bella bliss and subsequent creation of little english in the mid-2000's. [R. 11, p. 3, ¶¶ 65–68]. Shortly before Plaintiff filed this action, Defendant filed a lawsuit against Plaintiff in state court, alleging, among other claims, tortious interference with Defendant's relationship with a Columbian garment manufacturer. [R. 38–1, p. 3]. Defendant suggests that Plaintiff brought this action as a tactical response to the pending state court litigation. [R. 38–1, pp. 8–10]. The timeline and circumstances of this case are consistent with this allegation. The case was initiated within a few months of the state court litigation, and Plaintiff allegedly sought copyrights on long-standing designs shortly before filing its Complaint. *See id.* at 6; *see also* [R. 53, p. 10]. Consequently, even though there is no *direct* evidence of suspect motivation, and the record does not show a history of inappropriate or aggressive litigation tactics by either party, the record supports an inference of an underlying questionable motive for this litigation. *See Diamond Time*, 371 F.3d at 896 (finding that the "district court certainly had a basis to infer that the litigation was undertaken and prosecuted" with the improper motivation of multiplying fees and encouraging nuisance settlement).

13

Therefore, even though Plaintiff's actions did not rise to the level of bad faith to justify an award under the Lanham Act, the Court finds the possible questionable motive for the litigation weighs slightly in favor of granting attorneys' fees under the Copyright Act. *See supra* Section III(a)(i).

Likewise, the need for deterrence weighs slightly in favor of granting attorneys' fees. An attorneys' fee award in this matter may discourage future plaintiffs from bringing objectively weak claims and forcing innocent parties to incur unnecessary expenses. *See Kirtsaeng*, 579 U.S. at 205 (explaining that awarding attorneys' fees based on objective unreasonable "deters those with weak [legal positions] from proceeding with litigation."). Additionally, granting attorneys' fees to meritorious defendants encourages them to defend against unreasonable copyright claims. *See Compass Homes, Inc. v. Heritage Custom Homes, LLC*, No. 2:13–CV–779, 2015 WL 4639654, at *6 (S.D. Ohio Aug. 3, 2015) (citing *Assessment Techs. Of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 737 (7th Cir. 2004)) ("When the prevailing party is the defendant who receives no award, the presumption in favor of awarding fees is very strong."); *Fogerty*, 510 U.S. at 527 ("[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.").

Consideration of all of the *Fogerty* factors, including the objective weakness of Plaintiff's claims, leads the Court to conclude that an attorney fee award is appropriate in this matter. Despite Plaintiff's contention that the "improper inference that *bella bliss* was using this action for leverage in the state court proceeding was, arguably, the only basis that supported an attorney fee award[,]" the Court does not solely, or even primarily, rely on an inference of suspect motivation in arriving at its ultimate decision. [R. 57, p. 9]. Rather, based on the totality of the circumstances, and the fact that a grant of attorneys' fees under the Copyright Act is "*the rule*

14

*rather than the exception*," the Court grants Defendant's Motion for Attorney Fees as to the copyright claims. *WB Music,* 520 F.3d at 592. The Court adopts Magistrate Judge Stinnett's R&R, [R. 53], and Plaintiff's objection to the contrary is overruled.

### b. Calculation of Attorney Fees

The Court disagrees with Magistrate Judge Stinnett as to the calculation of attorneys' fees in this matter. In his R&R, Magistrate Judge Stinnett ordered Defendant to "file amended affidavits of attorneys' fees reflecting only the fees related to the copyright infringement claim." [R. 53, p. 11]. In its Amended Affidavit, Defendant included time entries for work that was "inextricabl[y] intertwined with the copyright claim[.]" [R. 54–1, p. 2, ¶ 5]. The Amended Affidavit requested $78,925, plus $2,725 for researching and preparing the amended affidavit. *Id.* at 1–2, ¶¶ 4, 8. In the alternative, if the Court disagreed that such entries were inextricably intertwined, Defendant suggested a reduced award of $59,781.25. *Id.* at 2–3, ¶ 9. In his SR&R, Magistrate Judge Stinnett recommended an attorneys' fee award of $78,925 but rejected the $2,725 in fees for reviewing records, researching, and preparing the Amended Affidavit. [R. 55, pp. 1–3].

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004) (citation omitted). Courts use the lodestar method to calculate the appropriate amount of attorneys fees. *Gonter v. Hunt Valve Co*., 510 F.3d 610, 616 (6th Cir. 2007) ("The starting point for determining a reasonable fee is the lodestar[.]"); *see also Couch v. Transworld Systems, Inc*. No. 3:16-CV-00618-CRS, 2017 WL 1520426, at *1 (W.D. Ky. Apr. 25, 2017) ("To calculate a reasonable fee, district courts in the Sixth Circuit use the 'lodestar' method."). The lodestar method involves

15

multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate. *Gonter,* 510 F.3d at 616. "[W]here documentation of hours is inadequate, or where counsel for the prevailing party seeks fees for hours that were not 'reasonably expended,' the district court may reduce the award accordingly." *Fredricks v. Potter*, No. 1;06-cv-113, 2009 WL 10679435, at *2 (S.D. Ohio Feb. 11, 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–43 (1983)); *see also Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). A district court's calculation of the lodestar value, "as well as any justifiable upward or downward departures, deserves substantial deference, but only when the court provides 'a clear and concise explanation of its reasons for the fee award.'" *Gonter,* 510 F.3d at 616 (citations omitted).

Here, Defendant did not object to the denial of the request for $2,725. *See* [R. 56]. In its objections, Plaintiff does not argue that the hourly rates as detailed by Karen C. Jaracz, [R. 38–5, p. 2], are improper. Rather, Plaintiff argues that the hours are unreasonable because, in its Amended Affidavit, Defendant included time spent on issues wholly unrelated to copyright, unreasonably vague entries, and comingled entries for time spent on copyright and trademark issues without any reduction in cost. [R. 57, p. 3]. The Court addresses these issues in turn and recalculates the reasonable value of attorneys' fees based on its findings.

### i.  Entries Unrelated to Copyright

Some of the entries included in Defendant's Amended Affidavit are wholly unrelated to the copyright claims. The most egregious example is the inclusion of hours spent challenging the Court's denial of Defendant's Motion to Dismiss Plaintiff's *trademark claims*. The Court issued its Order granting in part and denying in part the Defendant's Motion to Dismiss on March 16, 2021. [R. 22]. On April 21, 2021, Defendant filed a Motion to Reconsider, Certify for Interlocutory Appeal, or Order Limited Discovery, in which it discussed only the "*sole*

*remaining claim*" in the case—that is, whether Defendant's trademark is likely to cause confusion. [R. 28–1, pp. 1–5] (emphasis added). Additionally, in its Reply to the Motion for Attorney Fees, Defendant stated:

> [A]fter the Court entered the Order Granting Partial Dismissal (DN 22), the time was spent on the Lanham Act claims alone until Court entered its order dismissing the Lanham Act claims (DN 36). Time between the dates of those two orders can be separately attributed to the Lanham Act claim.

[R. 52, p. 11].[3] With this context in mind, the following hours are unrelated to the copyright claims and were improperly included in the attorneys' fee calculation: "Motion to certify to the Sixth Circuit" (4/18/2021- $800.00); "Reply to Motion to Certify" (5/7/2021- $400.00); "Discussing reply arguments in federal case with L. Zielke and updating client on both cases" (5/10/2021- $175.00); "Reply as to certification" (5/11/2021- $400.00); "Review of certification" (5/12/2021- $700.00); "Reply to motion for interlocutory appeal" (5/21/2021- $800.00). [R. 54–2, pp. 10, 12–13]. Therefore, the hours spent on issues related solely to the Motion to Reconsider the *trademark* claims, which must be subtracted from the attorneys' fee award on *copyright* claims, totals $3,275.00.

The Court likewise finds that awarding Defendant the fees it incurred pursuing a procedurally improper counterclaim for attorneys fees would not further the purposes of the Copyright Act, but rather, reward Defendant's failure to follow proper procedure. *See Autrey v. Food Concepts Int'l, LP*, No. 2:13-cv-00131, 2017 U.S. Dist. LEXIS 46693, at *33–34 (S.D. Ohio Mar. 29, 2017) (rejecting fees for time spent engaging in an "unnecessary motion for prejudgment attachment" and for "time spent preparing discovery requests that did not comply with the federal rules."). As the Court stated previously stated, Federal Rule of Civil Procedure

---

[3] Defendant likely did not intend for its broad statement to include hours spent on its counterclaim for attorneys' fees, which occurred during this period. Regardless, the Court finds those hours improper for reasons discussed below.

54(d)(2)(A) and Local Rule 54.4 "require that a claim for attorney's fees 'must be made in a motion' that is 'filed no later than 30 days after entry of judgment.'" [R. 36, p. 4]. Since Defendant failed to abide by these rules, and because the Court dismissed its counterclaim as a consequence, *see id.*, the following fees, which relate to the improper counterclaim, are to be subtracted from Defendant's total award: one-third of "Reviewing answer, counterclaim and affirmative defenses, edits to same" (3/25/21- $116.67); one-half of "Proofread and file answer to first amended complaint and counterclaim for attorney fees on copyright claim with court" (3/25/2021- $87.50); "Receipt review and cite checking the cases in Bliss's motion to dismiss the attorney fee claims in federal court action" (4/18/21- $875.00); "Researching and drafting response to BB's argument that the motion for attorneys fees should be dismissed" (4/18/21- $1,050.00); "Drafting and cite checking and research on the attorney's fees claim" (4/18/21- $875.00); "Response to motion on attorney's fees" (4/18/21- $1,100.00). [R. 54–2, pp. 9–10]. In total, $4,104.17 must be subtracted from Defendant's total attorneys' fee award.

Additionally, two entries made during this period, which either relate to the Motion to Reconsider or the improper counterclaim,[4] are likewise subtracted: "Exhibits to be used" (3/22/2021- $200.00) and "Rule 26 need information" (3/23/2021- $1,200.00). *Id.* at 9. Those entries total $1,400, which is likewise subtracted from Defendant's total award.

Finally, the one-hour entry dated August 2, 2021 for "File notice of appearance of counsel in civil appeal statement" is unrelated to the copyright claims. *Id.* at 16. As Plaintiff

---

[4] This Court finds that these entries are unrelated to the Answer to the Amended Complaint, which the defense attorneys were drafting around this period, because there are no exhibits attached to the Answer and Rule 26 is not implicated. *See id.* In contrast, it appears these entries are either related to the improper counterclaim or the Motion to Reconsider, as those are the only other issues the attorneys billed hours for during this period. *See id.* Specifically, the "Rule 26 need information" entry appears related to Defendant's Motion to Defer the Meeting of the Parties under Rule 26(f) pending resolution of the Motion to Reconsider. [R. 30]. Had these hours gone toward the Answer to the Amended Complaint, the Court would consider them comingled entries. *See infra* Section III(b)(iii). However, these entries appear unrelated to copyright issues, so the requested amounts must be subtracted from the total award.

rightly argues, its appeal related solely to trademark and trade dress issues. [R. 39; R. 57, pp. 10–11]. Therefore, $400 is subtracted from the total award.

### ii. Vagueness

Plaintiff argues that many of Defendant's billing entries are too vague to enable sufficient review. [R. 57, pp. 12–14]. The Court disagrees. The Sixth Circuit has stated that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended" on the litigation. *United Slate, Loc. 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502, n.2 (6th Cir. 1984).

In *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531 (6th Cir. 2008), the Sixth Circuit analyzed whether billing entries were so vague as to require a departure from the lodestar figure. *Id.* at 553–54. Some of these entries simply listed "Conference with," "Research," "Review file," and "Review documents." *Id.* at 553. The *Imwalle* court noted that the plaintiff's records specified the date that the time was billed, the individual who billed the time, and the fractional hours billed. *Id.* In addition, the court noted that, "[e]ach page of the billing record contain[ed] a heading identifying the client, client matter number, and client matter description[.]" *Id.* The Sixth Circuit stated that "[a]lthough some of the time entries in counsel's billing statement provide only the briefest description of the task completed, we have held that explicitly detailed descriptions are not required." *Id.* (citing *McCombs v. Meijer, Inc.*, 395 F.3d 3346, 360 (6th Cir. 2005)). Accordingly, after considering "counsel's billing entries … in the context of the billing statement as a whole and in conjunction with the timeline of the litigation," the Sixth Circuit upheld the district court's determination that such hours were "actually and reasonably expended in prosecution of the litigation." *Id.* at 554.

Here, when accounting for the context surrounding the billing entries, only a few of the over 100 entries are arguably vague. Even so, like in *Imwalle*, the entries include the date that the time was billed, the individual who billed the time, and the fractional hours billed. Additionally, "[e]ach page of the billing record contains a heading identifying the client," (Shannon Latham), as well as the case name. *See* [R. 54–2]; *see also Imwalle*, 515 F.3d at 554. Accordingly, even though these entries "provide only the briefest description of the task completed," such as "Discuss case strategy," "Rule 26 need information," and "Exhibits to be used," the Court finds that the reported hours were "actually and reasonably expended" on the litigation. *See* [R. 54–2, pp. 9, 16]; *see also Imwalle*, 515 F.3d at 554. Therefore, the Court will not reduce the total award based on vagueness.

### iii. Co-Mingled Entries

Finally, Defendant is not entitled to recover the entire value of hours spent equally on copyright and trademark issues. Because many of the filings in this case focused equally on copyright and trademark issues, the Court finds Defendant is entitled to fifty percent of the amount requested for comingled entries. *See Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) ("[T]he impossibility of making an exact apportionment [between Lanham Act and non-Lanham Act claims] does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect apportionment."); *Mike Vaughn Custom Sports, Inc. v. Chrystem "Chris" Piku Mgmt. Co.,* No. 12-13083, 2015 U.S. Dist. LEXIS 99384, at *7–15 (E.D. Mich. July 30, 2015) (reducing an attorney's fee award by 85 percent based on the approximate percentage of time counsel spent on the Lanham Act claim). A contrary result would, to a great extent, compensate the defense attorneys for their work on the trademark claims, even though the Court finds that "exceptional circumstances" are not present to warrant such an award. *See supra*

20

Section III(a)(i). This conclusion is bolstered by the notably minor difference between its initial attorney fees request—$111,650[5]—which included its work on trademark claims, and its amended request—$81,650—that purportedly only included its work related to copyright claims, despite the Court dismissing the copyright claims earlier in the litigation.

The Court agrees with the entries Plaintiff has labeled as "comingled," and therefore, it is unnecessary to list the fifty-plus entries that Plaintiff has correctly identified. *See* [R. 57-1, pp. 1–3]. Examples of these entries include "Prepare motion to dismiss," "Discuss amended complaint defenses with LJZ," "Research to support motion for attorneys fees," and "Work with L. Zielke on reply edits federal court." These entries total $48,587.50. However, upon review of the billing records, the Court finds that there are additional "comingled" entries.

Plaintiff argues that Defendant is not entitled to any portion of the fees incurred responding to Plaintiff's pre-litigation cease-and-desist letter. *See* [R. 57, p. 10]. The Court disagrees. The cease-and-desist letter addresses the copyright and trademark claims at issue in this litigation. [R. 11–15; R. 38–3]. Accordingly, the Court believes that the following entries were reasonably expended on this matter and are properly categorized as comingled: "Begin response to letter from T. Bonner regarding intellectual property infringement" (5/11/2020-$900.00); "Respond to letter from T. Bonner to Little English alleging intellectual property infringement" (5/12/2020- $1,800.00); "Continue work on response to T. Bonner letter" (5/12/2020- $675.00); "Draft response to letter from T. Bonner regarding intellectual property"

---

[5] The Court notes that the initial request included many hours related to the attorney fees motion that were not included in the amended request. For example, in its Reply to the Motion for Attorney's Fees, Defendant included 43 hours spent "reviewing, researching, and responding" to Plaintiff's Response to the Motion for Attorney's Fees. [R. 52-1, p. 4]. The Court need not analyze the excess of such a request, nor whether such hours were ever actually billed, because, in its amended request, Defendant only included 24 hours for its work on the Reply over this time period. [R. 54-2, pp. 18–19]. This difference alone accounts for $5,800 of the difference between the initial and amended requests, demonstrating that the difference between the initial and amended requests is not entirely, or even largely, due to the removal of trademark related hours.

(5/18/2020- $825.00); "Research standards for attendance at emergency temporary injunction

motion" (5/18/2020- $350.00); "Attend to various case matters" (5/18/2020- $800.00); "Review

email from S. Latham" (5/21/2020- $75.00); and "Perform research relating to intellectual

property infringement allegations" (5/21/2020- $1,600.00). [R. 54–2, pp. 1–2].

Further, the Court finds that the following entries are also comingled: "Attention to court

order and docket" (7/22/2020- $200.00); "Conference on cases" (9/7/2020- $200.00); "Status

update" (9/17/2020- $400.00); "Conference with L. Zielke, S. Latham, De. Latham, and Du.

Latham" (9/21/2020- $225.00); and "Discuss case strategy with L. Zielke" (8/3/2021- $75.00).

[R. 54–2, pp. 6–7]. The Court also believes that the May 28, 2020 entry, which billed $1,500.00

for discussion about "filing of federal court action and response" as well as researching drafting

the motion to dismiss as to trademark and state law claims, properly belongs in this comingled

category. *Id.* at 2. Finally, the Court believes that the entries for "Work on affirmative defenses"

(3/18/21- $1,300.00); "Drafting answer to first amended complaint" (3/19/21-$1,225.00);

"Drafting answer and affirmative defenses in federal case" (3/22/21- $1,225.00); one-half of

"Proofread and file answer to first amended complaint and counterclaim for attorney fees on

copyright claim with court" (3/25/2021- $87.50), and two-thirds of "Reviewing answer,

counterclaim and affirmative defenses, edits to same." (3/25/21- $233.34) belong in the

comingled category. *Id.* at 8–9.

In total, the comingled entries add up to $62,283.34. The Court subtracts half that

amount, $31,141.67, from the total fee award to avoid compensating Defendant for its work on

trademark claims.

Accordingly, after subtracting the entries unrelated to copyright claims and halving the

comingled entries, Defendant is entitled to $38,604.16 in attorneys' fees. This value more fairly

represents the time spent on the copyright claims, and still adequately compensates defense counsel for its successful efforts to dismiss Plaintiff's copyright claims.

## IV.    CONCLUSION

For the reasons above, Defendant is entitled to attorneys' fees under 17 U.S.C. § 505, totaling $38,604.16. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation, [**R. 53**], is **ADOPTED** as the opinion of this Court.

2. The Magistrate Judge's Supplemental Report and Recommendation, **[R. 55]**, is **REJECTED IN PART.**

3. Defendant's Objections to the Magistrate Judge's Report and Recommendation and Supplemental Report and Recommendation, **[R. 56]**, are **OVERRULED**.

4. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation and Supplemental Report and Recommendation, **[R. 55]**, are **SUSTAINED IN PART** and **OVERRULED IN PART**.

5. Plaintiff owes Defendant $38,604.16 as the reasonable value of attorneys' fees in this matter.

This the 19th day of April, 2022.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY